Good morning, Your Honor. My name is Steve Goldstein. I'm representing the defendant and the appellant in this case, Lisa. May it please the Court, there are two fundamental errors with the trial court's ruling which granted an injunction ending Ryderwood's 57-year history as a retirement community. The first error was in the interpretation of what the transitional period in the year 2000 was for. The Court concluded that this transitional period meant that this was the only time a community could transition from non-HOPA status to HOPA compliant, and that was an error. The transitional period was a threshold required to be HOPA compliant could discriminate in order to reach that 80% threshold. Now, of course, that 80% threshold is having units or residence within that community with a member who is 55 years or older. The second error is related to this. Just so I understand, you understand that the injunction precludes ever coming into compliance? I believe it does, because what the Court said was that because Ryderwood did not become HOPA compliant in the year 2000 after this transition period, it was continuing to discriminate thereafter. Well, that's true, but did the district court injunction or by a summary judgment ruling, I'm just looking to see, did the district court say that you couldn't attempt to come into compliance now? The district court did not say that, but under the Court's ruling, I don't know how Ryderwood could become compliant based on what the Court said. Well, he ordered you to take down the signs, ordered you to comply in full, so if you adopted the verification and affidavit process, you fully complied with everything. But Your Honor, Ryderwood had already been complying with all that for the last three years before the lawsuit was brought. It had been conducting all the surveys. It had complied with everything that HOPA required. So to say that there was a way for... But you never did it without the, you know, taking down the... You never sanitized it, if you will, as I understand it. In other words, you went ahead and tried to comply, but before you did that, you still held it out as a restricted community. Right, but I think the key there, and that brings me to the second part of the error, is that what the Court was essentially saying, and I think what your question gets to, is that a past violation means that you can't be HOPA compliant today. Let me pose it this way. Let's suppose... Have you complied with the injunction yet? No, because... Okay, let's suppose that tomorrow you go through the entire... You do everything. You take down the signs. You readopt the procedures, you know, the verification and so on. And then you follow through with then reinstituting the restrictions. The problem with that, Your Honor, is first of all, there's no guidance. There's no HUD regulations. There's no case law saying that that's what one does if one wasn't compliant during the transition period. The second problem... Yeah, go ahead. Finish that, because then I have a follow-up question. The second problem with that is that the whole purpose of the transition period was that you could discriminate in order to reach the threshold of 80%. Riderwood is already close to 100%, so if you remove all the restrictions and allow families to move in, you're sort of defeating the purpose of what the transition period was for. The transition period was actually a period during which you could discriminate against families. It was an exception to HOPA. So I'm not sure what the purpose now of removing all restrictions would be, because it's an exception to HOPA. My question is this. If this decision were reversed, wouldn't your client be liable for any discrimination that occurred before it was in full compliance, assuming there was no statute of limitations problem? If it is affirmed, what the lower court is saying is that there basically is no statute of limitations because there's a continual violation from the year 2000 on. Well, no, I understand that, but that's why I prefaced it by saying if we reversed that conclusion, wouldn't you still be liable for – there was a period of time before you followed the proper procedures and reached the proper number. Then there's a point in time when, in your view, you did so even though it wasn't during the transition period. My question is, before that date, wouldn't your client be responsible because it didn't go through the transition period where there was this little safe harbor? It would be liable for any discrimination that it engaged in, but after the transition period and before it reached compliance, even under your theory, right? Yes, Your Honor. Even under my theory, there would be at least potential liabilities. Right, and there's issues, but you're saying theoretically that what the transition period does is give you a free pass on discrimination for a short period. After that, no free pass. You can be sued daily up until you comply. That's exactly what the regulation says, and that's exactly what the 2006 HUD memorandum says. What I'm saying is that, yes, if Riderwood was not compliant in the year 2000, what that means is a family that tried to move into Riderwood at that time that had a child under the age of 18 could sue Riderwood, and Riderwood may not be able to have a hope of defense because it wasn't compliant. The same thing happened from 2000 all the way up to 2006. If families during that time period tried to move into Riderwood and were not allowed to, they would have claims. You're saying that they would. You're not disputing that. I'm not disputing that. I'm saying we may have had a hope of defense at that time because of intent. But, and then I missed what you said about the statute of limitations. Well, subject to the statute of limitations. What is the statute of limitations? It's a two-year statute of limitations under the FHA. So, as a practical matter. As a practical matter, they wouldn't have claims today. But they would have at the time. Yes. But after the transition and before you got to the point where you believe you were in every person who tried to come in could have sued you right then and there. Yes. That is correct. And the irony here was some of the plaintiffs themselves that brought this to Reese's attention and that's when surveys started being conducted in 2006. And the adequacy of those surveys has been contested, but the lower court did not reach that determination as to whether they were adequate. There were cross motions for summary judgment on that issue. The lower court relied exclusively on this transition period. And I think the key here, which gets to the... Is there any discussion in the district court during argument or whatever about the practical consequence? In other words, did the district court say anything during the hearing outside what's in the record about what would happen on a going forward basis if you took down the signs and then sought to go through the process that I just suggested? Did the district court say you can't do that? No, there was no discussion. You're forever barred? Frankly, there was no oral argument on that hearing. So there was no discussion of that issue. How could paragraph A of the injunction ever allow compliance? Because it forbids enforcement of any age restriction ever. Well, that's the problem. I don't... We couldn't figure out a way that we could comply that would be blessed or that we felt secure with. We felt that if we complied with the injunction, it just meant we were no longer a retirement community, period. Because what the court's reasoning was, was if you miss that transition period, it's all over. And you can no longer discriminate ever, period. And I think the key to the problem with that is in the HUD regulations themselves, and we included them in the record on page 134. And HUD specifically explained there what the 80% occupancy means. And it says section 103.05, which is the regulations applying HOPA, provides that in order for a housing facility or community to qualify for the exemption, at least 80% of its units must be occupied by at least one person 55 years of age or older. The following sentence is the key one. This occupancy requirement must be met at the time of any alleged violation of the act. That's critical. The occupancy requirement must be met at the time of the alleged violation of the act. So if a family sues us in the year 2007, you look at 2007. Was there a HOPA survey? Were there signs? Were there indications that this community intended to be a retirement community? Because that's the whole purpose of HOPA. It's trying to protect those communities that intend to be retirement communities. And there's no dispute here. Riderwood's always intended to be a retirement community. There's nothing in the statute or the regulations or anything else that says a past violation, a violation back in the year 2000, means that you cannot be compliant today. And the HUD memorandum makes that perfectly clear. Again, I found it puzzling with the... It doesn't make much perfect. I appreciate that, Your Honor. But it does state quite clearly what our argument is. And it's in the third paragraph. And it says the transition period allowed a community or facility that did not yet meet all of the HOPA requirements to deny housing to families with children in order to get 80% of its units fulfilled by at least one person 55 and older. That's what the transition period was for. It's simple. An exception to HOPA so that communities could transition. It's the only time that a community can discriminate even if it does not have 80% compliance. And of course, Riderwood's been a retirement community since 1953. It's had a bylaw since 1975 that's been in force saying you have to be 55 or over. But it didn't have the survey. It did not have a survey in the year 2000. And if Riderwood had been sued in the year 2000 or 2001 or 2002, it probably would have been liable. It would have been tough to prove HOPA compliance with no survey the way the statutes and regulations... Your argument now that what this says essentially is... I mean, this is allowing somebody to come into compliance, you know, to get up to the 80%. It seems to be focused on that. You were already at 80%, maybe 100%, whatever it was. Yes. So... And that's why I think even if Riderwood had been sued in the year 2000 if I were representing them, I would have still made an argument that we were HOPA compliant because we complied with the intent, that there's no evidence that, frankly, it wasn't 85%, 90%, 95% compliance. Whether that would have won the day back then, I don't know because the statute does say you need an affidavit. Well, what I find interesting about the memorandum, it seems to me in some ways not even... It tries to address the situation, but it doesn't fully because it doesn't really deal with the situation that your client was in at all. It doesn't deal with the situation where someone was at 80%, but they had not fulfilled the other... One could call them technical or not, the other requirements of the statute. So it doesn't... That's why, clear or not, it just doesn't seem to help to me. Yeah, I agree. I think what it means is, frankly, that Riderwood didn't need a transitional period because it was already... It had already met all of the elements except... One. Except one, and that was the surveys. But Riderwood started performing those surveys back in 2006 and has regularly since. I see I only have 48 seconds. You may reserve it if you'd like. Yeah, I would like to reserve it, unless you have more questions now at this point. I think not. I certainly don't want to leave any questions unanswered. Thank you. Good morning. May it please the Court. My name is Joe Lynham, and I represent the 54 individuals who are bringing a Fair Housing Act claims in this case. Counsel's arguments, or the way he presented those arguments, it kind of misconstrues the basis of the district court's argument or conclusions. This HUD memo is actually very clear, and the district court relied on it. In 1993, HUD told RESA, we don't care how long you have been having these age restrictions. You need to comply with HOPA. Get yourself a lawyer. And so in the late 90s, HOPA, the requirements were changed, and what HOPA said was, existing communities, if you're out there, you get one year to where you can discriminate to meet our requirements. So at the end of that one year, if you did not meet those requirements, all three requirements, then the issue arose. Well, what happens with existing communities who didn't meet this deadline? What are we going to do with them? Can they later convert? This memo, I think, is very clear, as the district court did, and it says this. Okay, you can convert. It can be some new place. But if it's an existing community, the way you can convert is you cannot discriminate after the end of that deadline. Wait a minute. Why does it say that? Because what it says, you can convert. That is, if you haven't achieved the 80% or whatever, you can go through this process, but you can't discriminate in the run-up to it. But they were already at 80%. Your Honor, at the bottom of page 1 of the memo, it says, this memorandum provides clarification on how communities that did not convert to Housing for Older Persons, in parentheses, by May 3, 2000, can become Housing for Older Persons. Right, and then on page 2, it says, an existing community or facility can convert to Housing for Older Persons if 80% of its occupied units become occupied by at least one person 55 or older. So they've done that. They've done that. Yep. And they're there. They have 80% or more. And what the rest of that paragraph seems to talk about is what happens if you're not at 80%? How can you get there and you don't get a free pass? But it seems to me that this memo says absolutely nothing about a situation in which a community already has 80% already has 80%, but they haven't fulfilled the other requirements. The memo is silent about that. Well, Your Honor, I take exception to your I respect your comments, but I take exception to them. Look at the fourth sentence in paragraph 1. It says, if a family with children seeks to occupy a vacant unit in an existing facility before it has met all of the requirements, then it can't do so. This memo is about reaching all of the requirements. Why? This analysis that Wait, wait, wait. The fourth sentence in paragraph 1. You mean paragraph 1? On page 2. At the top of page 2. I switched it. Okay. In the fourth sentence it refers to all of the requirements. Yes. All of the requirements. Okay. So, they had not met all of the requirements. Okay. So, they adopted the one missing item which was the survey. And now they have. So, what What happens? Until they did that they were not exempt. Now they've done it. So, why isn't counsel correct that they weren't they didn't have the protection for anybody that they had discriminated against up to that point. But once they completed the one missing element I'm assuming that they otherwise were at 80%. They were an existing community at 80% or more could have been 100%. Unless you're reading this memo to say an existing community of hetero you know mixed ages can move itself into a you know a HOPA qualified but any existing community that was already limited to 55 or older is forever barred. You have to go out and forget this one and go build a new one which is the alternative. But is that how you're reading it? No. But what it's saying is if you didn't meet all the requirements by this deadline you're not in that great of shape. You've got some problems. It doesn't say that. At best it's ambiguous. It's talking about someone who didn't meet the deadline. Didn't meet the 80%. Didn't meet the transition period. I'm just trying to understand this memo addresses the question about what happens to existing communities or communities that want to convert or establish themselves. Now we're outside the transition period. This memo is written outside the transition period. Okay. So does are you arguing are you conceding that Risa the Riverwood or whatever it is was an existing community in 2006? They were an existing community before this transition deadline. I want to answer my question. Were they an existing community as that term is used in this memo in 2006? Not that they were compliant with HOPA but that they were an existing community. So if someone goes you know they come to a lawyer in 2006 and says oh my gosh we didn't fulfill all the requirements and the existing community was referring to communities that were in existence before this transition period. What's a community? What's a community? A community is a group of homes or housing units which are looked at as for Right. So was this place an existing community? But see the point is is that what HUD is saying here is if you did not become HOPA compliant by the end of the transition period it is possible for you later to convert but we're not going to What is the period of time? I think it should be about two or three years. Where do you get that? I understand your position but I wrestle with that myself. What do they do unless you're arguing they're forever barred which seems harsh. How do you bring into the mix the construction of the injunction? How long is it applicable? A court or HUD would have to determine that time period. There was a case where they determined three years. If I could I'd like to address the question you had. I have a question too. May I just because it's about this time issue as I read paragraph 2A of the injunction order it would never allow reconversion. It's you can never have an age restriction period. Is that the way you read it or do you see that there's some opportunity to come back into the good time  Is there a limitation in the order if it's not forever? Your honor in this particular situation where it's this isolated housing community out kind of in the middle of all by itself council has explained that almost 100% of the home are 55 and older. That's not my question. I'm looking at the injunction and I'm looking at something that says they must cease and desist from their age regulations period. In the injunction do they ever have the opportunity to become hope and compliant? Yes. If they come about the 80% threshold naturally meaning not illegally discriminated against. So they have to trip everybody out of the community that currently exists and then they have to start from scratch? No. Well then counsel, let's assume 100% 55 or older. I understand some of your clients want to get out. They want to be able to sell to a wider audience, a wider market. How will they ever purge the taint of how they got the percentage that's left of the prior discrimination? Your Honor, there is no showing whatsoever that the percentage is going to go down. Our clients are... Well, if it never does counsel, then how can... I really am trying to understand how this works because under this injunction will they be able to seek HOPA relief to say,   now converting under the process that the memo provides to counsel and counsel and counsel and counsel and counsel and the memo provides, we haven't been discriminating for a year. Okay? Your Honor, they're going to have to wait a period of time. But what's the period of time? Where are you getting that? In other words, how are we going to determine the time period? I'm not assuming anything. I'm trying to understand how the statute and this memo work in your view.  no statement of what that time period would be. It would have to be some time period satisfactory to HUD or to the court. But the problem here is for those people who didn't meet this deadline, they couldn't then keep going forward and discriminate to get to the 80%. That would be like you pointed out. And here it was five years. It's actually 2006 when they first tried to be compliant. So there was this period where they were acting illegally. And nobody sued them at that time. There was litigation going back and forth during that time. Well, I guess either way it's not in the record. But certainly opposing counsel has conceded what seems obvious to me, which is the period after the transition period, but before there is an effort to comply or compliance, which I know you say is invalid, but there was this other moment. There was no protection against any lawsuit for discrimination during that period. There was no hope of protection. There could be other defenses, of course. But that's correct. They could have been sued that whole period of time, 2000, at the end of the transition until the compliance in  That's correct. However, this memo and what HUD is trying to explain is that if you weren't compliant by the end of the transition, you can't go out there and now try to get up to the 80% mark by acting by discriminating. You have to get there. You can give incentives to people to move out. You can do this, that, and so on, if you are trying, if the element that you're trying to achieve is 80%. In this case, on the facts of this case, they were already at 80% well over it, so they didn't need to engage in any acts of discrimination to get there that they hadn't already done and may have done illegally, but now the one thing that they didn't need the 80%, they had that, now they needed to adopt something that would satisfy the missing element on the surveys. They've done that, so now they've got 80% and the survey, so why aren't they within the parameters of the... Because HUD decided, and they're the agency which said what the rules would be, was that they were not going to accept that. If you weren't HOPA compliant by the end of the transition period, we are not going to let you go discriminate until you decide  are not compliant. We have requested the views of HUD on this case, which we have not received yet. Of course they have some time to file it. You've made quite a pitch that we should rely on the interpretation in the memo, which is entitled to skid more on. Do you still think we need to defer to their view of how the law fits into this case? Well, Your Honor, in that hypothetical situation, I'm not sure what my answer is. I mean, to me, if that occurred, it would be totally consistent with what is clearly stated in this memo and what the district court relied on. So then we'd be back to square one for us because we'd have, in your view, two conflicting HUD opinions? Yes. So then we get to decide without deferring to either one or pick the one we like better or something. I don't know. There seems to be this concern that, gee, Riderwood has to be held to compliance someday. My clients are ones who have been the victims of immense retaliation and they're the ones who believe me, I'm not my motivation and empathy in this case is neutral as far as the legal question here. All I want to do is  what the statute and the regulation in this memo mean. Thank you, Your Honor. It's an intellectual problem, okay? I'm not denying equities of anybody. Very good. It's not where I'm coming from. Very good. Thank you, Your Honor. Thank you all. Thank you, counsel. And Mr. Goldstein, you have a little bit of time remaining. Thank you, Your Honor. I think what's frankly a little bit bizarre about the relief being requested is that the transition period was a period where the community was allowed to discriminate in order to reach 80%. And yet the suggestion is we not be allowed to enforce age restrictions so that there's a potential of getting below 80%. What's the point? It doesn't accomplish anything. I think in interpreting To be fair, what it accomplishes is assertedly fulfilling the requirements of the regulations that compliance has only a certain route. That it has certain requirements. And if it has certain requirements, it has certain requirements. Otherwise you can't discriminate. Right. And not the requirements since 2006. So to undo all that doesn't seem to me to accomplish I mean it is contradictory to the whole purpose behind the transitional period in the first place. But I think the more important thing is the section that I read from page 134 of the appendix to the regs themselves. Because I can't predict what HUD is going to say when you do get that memo I encourage you to look at that what HUD regs themselves say which is to determine if there is a mechanism which was to give a mechanism which Riderwood has now complied with of protecting retirement communities and the interpretation of the lower court and plaintiff surge does the opposite is trying to destroy a 57 year retirement community that's been complying with all regulations for now the last four years. Thank you counsel the case just argued is submitted we thank you the court for this session stands adjourned
judges: Marshall, Graber, Fisher